UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                  :

UNITED STATES,                      :
                                  :
                                  :

           -v-                     :                    1:97-cr-786-GHW
                                  :

MIGUEL GUZMAN,             :                     ORDER
                                  :
                     Defendant. :
------------------------------------------------------------ X

> **USDC SDNY**
> **DOCUMENT**
> **ELECTRONICALLY FILED**
> DOC #:_____
> DATE FILED: 1/25/2026

GREGORY H. WOODS, United States District Judge:

On January 7, 2026, Mr. Guzman filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Dkt. No. 632 (the "Motion"). On January 21, 2026, the Court received a supplemental submission in support of the Motion. Dkt. No. 633. That supplemental submission attaches, among other things, a number of Mr. Guzman's medical records and requests for "administrative remedies" from the warden of the facility where Mr. Guzman is incarcerated. The Court has considered the Motion and all of Mr. Guzman's supplemental submissions.

In his Motion, Mr. Guzman argues that he is "worthy and deserving of a second look," after having served 28 years of his life sentence. Motion at ECF 22. In his description of his criminal conduct, Mr. Guzman accepts that the "evidence at trial established that Mr. Bin Guzmán was the leader of a violent drug gang, known primarily as 'Power Rules,' in connection with which Bin Guzmán conspired to distribute crack, cocaine and heroin, and conspired to commit and committed several murders." *Id.* at ECF 23. In 1999, Judge Shira A. Scheindlin sentenced Mr. Guzman to six concurrent terms of life imprisonment, to be followed by 145 years imprisonment, running consecutive to the life terms. In his Motion, Mr. Guzman "recognizes, understands and accepts that his criminal conduct was decidedly serious." *Id.* at ECF 25.

Still, Mr. Guzman argues that he deserves "a second look and a second chance." *Id.* at ECF

25. He believes that he should be released now. *Id.* Mr. Guzman marshals several arguments in favor of the request. He argues that he has rehabilitated himself in prison such that today, at age 53, "he is mature, enlightened, evolved . . . ." *Id.* at ECF 31. He points to "hundreds of hours" of "rehabilitative programming and self-improvement work he has accomplished behind bars." *Id.* at ECF 34, 35.

He also argues that a time served sentence is sufficient, and that it "accurately reflects the nature and circumstances" of his offense. *Id.* at ECF 33. He also argues that his sentence is disparate from those of his co-defendants and defendants in other cases, and that the alleged sentencing disparity justifies a lesser sentence. *Id.* at ECF 36-38. Mr. Guzman contends too that a lesser sentence is sufficient to meet the goals of deterrence. *Id.* at ECF 39. In presenting that argument, Mr. Guzman acknowledges that "his early disciplinary history in unacceptable," but contends that his "disciplinary violations are wholly inconsistent with his character as reported by his family, friends, staff, and his peers . . . ." *Id.* at ECF 39-40. He argues that his age makes it less likely that he will recidivate. *Id.* at ECF 40.

Mr. Guzman marshals several contentions to support his argument that "extraordinary and compelling" reasons exist that justify his early release. He points to his difficult childhood, *id.* at ECF 41-43; his age at the time of the offense, *id.* at ECF 43-46; alleged sentencing disparities between him and other defendants, *id.* at ECF 46-50; joint and back pain, for which he is receiving "extensive medical care," *id.* at ECF 50-54; the continued existence of COVID-19, *id.* at ECF 54-57; and the challenging conditions at Florence ADX—the high security facility to which the defendant has been designated, *id.* at ECF 57-61. Finally, Mr. Guzman points to his efforts to rehabilitate himself. He acknowledges that even at Florence ADX, he has "managed to accumulate about two dozen incident reports." *Id.* at ECF 62. But he says that he has not received an incident report in "a little over 16 years." *Id.*

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)).  As relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons."  The "First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  The defendant, however, must not be a danger to the community and the reduction must be consistent with the Commission's policy statement.  *Id.* § B1.13(2)–(3). "[W]hen a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction."  *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).

Courts are to "liberally construe pleadings and briefs submitted by *pro se* litigants . . . reading such submissions to raise the strongest arguments they suggest."  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007).  Because Mr. Guzman is proceeding *pro se*, the Court construes his submissions with the special solicitude to be accorded to *pro se* litigants.

In his Motion, Mr. Guzman asserts that he made a request to the warden of his facility for compassionate release and that it was denied.  Motion at ECF 72.  Therefore, the Court accepts that Mr. Guzman has satisfied the statutory preconditions to his application.

In this matter, the Court does not need to evaluate whether the circumstances described Mr. Guzman's application constitute "extraordinary and compelling" reasons for his release.  That is because the Court does not believe that releasing Mr. Guzman early is justified after reviewing the factors under 18 U.S.C. § 3553(a).  *See Keitt*, 21 F.4th at 73.

Mr. Guzman's crimes were exceptionally serious.  As the Second Circuit described when affirming Mr. Guzman's original conviction:  "The evidence at trial showed that Guzman was the head of a Bronx gang called Power Rules that sold crack and heroin, and committed, or attempted to commit, numerous murders."  *United States v. Guzman*, 7 F. App'x 45, 49 (2d Cir. 2001) (summary order).  "After a three-month trial in the Southern District of New York, Guzman was convicted of RICO and racketeering conspiracy, based on numerous racketeering acts including murder and attempted murder, narcotics conspiracy and extortion conspiracy, as well as various counts under 18 U.S.C. § 1959 and 18 U.S.C. § 924(c)."  *Id.*

While Mr. Guzman has served a substantial amount of time in prison, releasing Mr. Guzman now would not be just, given the nature of his crimes, which included numerous murders and attempted murders.  Nor would it be consistent with the other goals of Section 3553(a).  The need for general deterrence would not be served by releasing Mr. Guzman early.  Nor would the goal of personal deterrence.  Mr. Guzman's prior history, including the nature of his underlying criminal conduct, supports the Court's view that there is a continued need for personal deterrence.  The Court appreciates Mr. Guzman's efforts to rehabilitate himself while in prison.  The Court applauds his extended history without a violation.  At the same time, Mr. Guzman's disciplinary history has not been unblemished—it was previously, in his words, "unacceptable.  The Court observes that his

period without a violation occurred while incarcerated under stringent conditions at Florence ADX. As a result, it is challenging for the Court to conclude the extent to which his lack of disciplinary history is the result of his rehabilitation as opposed to the conditions of his confinement.

Mr. Guzman is now an older gentleman, and he is dealing with ailments such as back and joint pain that accompany the aging process. But those facts do not alter the Court's assessment of the appropriate sentence in his case. The Court expects that Judge Scheindlin anticipated such changes over the course of Mr. Guzman's life sentence when it was initially imposed. They do not justify a reduction in it now.

Mr. Guzman's argument that he received a disparate sentence does not support a modification of his sentence. As the Court wrote in its order responding to a prior motion for compassionate release from Mr. Guzman, Dkt. No. 631, there are many reasons why defendants receive different sentences. And in this case Mr. Guzman was proven at trial to be "the head" of the gang whose members were prosecuted in this case. *Guzman*, 7 F. App'x at 49. That the head of the gang received a greater sentence than others involved in the conspiracy does not justify a reduction in his sentence.

In sum, after considering all of the 3553(a) factors, the Court concludes that it is not appropriate to release Mr. Guzman early. The Court denies Mr. Guzman's request to appoint counsel for purposes of litigating the Motion.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 632 and 633 and to mail a copy of this order to Mr. Guzman.

SO ORDERED.

Dated: January 25, 2026
      New York, New York

_____
GREGORY H. WOODS
United States District Judge

6